UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-6769 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CONTANGO OIL & GAS COMPANY, | : **SECURITIES EXCHANGE ACT OF** |
| JOHN C. GOFF, WILKIE S. COLYER, JR., | : **1934** |
| B.A. BERILGEN, LON MCCAIN, JOSEPH J. | : |
| ROMANO, KAREN SIMON, and JANET | : **JURY TRIAL DEMANDED** |
| PASQUE, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Contango, Inc., ("Contango or the "Company") and the members Contango's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Contango and Independent Energy Corporation and its affiliates ("Independent Energy"). Independent Energy is owned by Kohlberg Kravis Roberts & Co. ("KKR"), an American global investment company.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on July 23, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby (i) IE OpCo LLC, a wholly owned subsidiary of Independence Energy ("OpCo") will be recapitalized, Independence will distribute ownership interests in OpCo to IE PubCo Inc., another subsidiary of Independence ("New PubCo") and, immediately following such distribution, Independence will merge with and into OpCo, with OpCo surviving the merger (the "Independence Merger"); (ii) immediately following the Independence Merger, IE C Merger Sub Inc., a wholly owned subsidiary of New PubCo ("C Merger Sub") will merge with and into the Company, with the Company as the surviving corporation in the merger and a direct wholly owned subsidiary of New PubCo (the "Merger"), and, in accordance with the Texas Business Organizations Code, each share of common stock, par value $0.04 per share, of the Company (the "Company Common Stock") issued and outstanding immediately prior to the Merger Effective Time (other than Excluded Shares) will be converted into the right to receive 0.200 shares of Class A common stock, par value $0.0001 per share, of New PubCo (the "New PubCo Class A Common Stock") (the "Exchange Ratio"), along with cash in lieu of any fractional shares; (iii) immediately following the Merger, the Company will merge with and into IE L Merger Sub LLC, a wholly owned subsidiary of New PubCo ("L Merger Sub"), with L Merger Sub as the surviving entity in the merger and a direct wholly owned Subsidiary of New PubCo (the "LLC Merger"); (iv) immediately following the LLC Merger, New PubCo will contribute 100% of the equity interests in L Merger Sub to OpCo in exchange for certain equity interests in OpCo (the "Contribution"); and (v) immediately following the Contribution, OpCo will contribute L Merger

Sub to Independence Energy Finance, LLC, a Delaware limited liability company (the transactions contemplated by clauses (i) - (v) the "Proposed Transaction").

3. As discussed below, Defendants have asked Contango's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Jefferies LLC ("Jefferies") in support of its fairness opinions.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Contango's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because KKR is headquartered in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Contango stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant John C. Goff has served as a member of the Board since 2018.

11. Individual Defendant Wilkie S. Colyer, Jr. has served as a member of the Board since 2018 and is the Company's President and Chief Executive Officer.

12. Individual Defendant B.A. Berilgen has served as a member of the Board since 2007.

13. Individual Defendant Lon McCain has served as a member of the Board since 2013.

14. Individual Defendant Joseph J. Romano has served as a member of the Board since 2012.

15. Individual Defendant Karen Simon has served as a member of the Board since April 2021.

16. Individual Defendant Janet Pasque has served as a member of the Board since April 2021.

17. Defendant Contango a Texas corporation and maintains its principal offices at 717 Texas Avenue, Suite 2900, Houston, Texas 77002. The Company's stock trades on the New York Stock Exchange under the symbol "MCF."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**    **The Proposed Transaction**

20. Contango, an independent oil and natural gas company, acquires, explores, develops, exploits, and produces crude oil and natural gas properties in the shallow waters of the Gulf of Mexico and onshore properties in Texas, Oklahoma, Louisiana, and Wyoming in the United States. As of December 31, 2020, it had proved reserves of approximately 34.2 million barrels of oil or other liquid hydrocarbons equivalent, consisting of 13.0 million barrels of oil, 84.5 billion cubic feet of natural gas, and 7.2 million barrels of natural gas liquids. The Company was founded in 1986 and is headquartered in Houston, Texas.

21. On June 8, 2021, the Company and Independent Energy jointly announced the Proposed Transaction:

> HOUSTON and FORT WORTH, Texas, June 08, 2021 (GLOBE NEWSWIRE) -- Independence Energy, LLC ("Independence") and Contango Oil & Gas Company (NYSE American: MCF) ("Contango" or the "Company") today announced that they have entered into a definitive agreement to combine in an all-stock transaction. The combination, which was unanimously approved by both companies' Boards of Directors, will create a premier, diversified and low leverage U.S. independent oil and gas company focused on consolidation.
>
> Independence is a diversified, well-capitalized upstream oil and gas business built and managed by KKR's Energy Real Assets team with a scaled portfolio of low-decline, producing assets with meaningful reinvestment opportunities for low-risk growth across the Eagle Ford, Rockies, Permian and Mid-Continent. Since 2011, KKR's Energy Real Assets team has been executing on a consistent cash flow and risk-based strategy, complemented by deep industry expertise, responsible investment practices and the broader capabilities of KKR's global platform. KKR is a leading global investment firm investing in a diverse range of energy sources and committed to investing in a stable energy transition, one that

supports the energy needs of today in a responsible manner while also contributing to a cleaner tomorrow.

Contango is a Fort Worth, Texas based, independent oil and gas company whose business is to maximize production and cash flow from its portfolio of low-decline, producing assets primarily in the Mid-Continent, Permian, and Rockies areas. Contango has a proven track record of complementing that production and cash flow via acquisitions, having completed four significant acquisitions in the last 18 months.

Upon completion of the transaction, Independence shareholders will own approximately 76 percent and Contango shareholders will own approximately 24 percent of the combined company. Based on Contango's closing stock price of $5.62 on June 7, 2021, and pursuant to the terms of the proposed transaction, the combined company will have an initial equity market capitalization of approximately $4.8 billion and enterprise value of approximately $5.7 billion.

**Transaction Highlights**
- Positions the combined company to be a leading consolidator in the U.S. oil and gas industry through increased scale, improved access to capital, low leverage and a successful, proven management team
- The combined company is positioned to be KKR's primary platform for pursuing upstream oil and natural gas opportunities
- Projected to be highly accretive to financial metrics, including ~15% and ~50% accretive to Contango's 2021E and 2022E cash flow per share, respectively, based on current management assumptions
- Projected to provide preliminary 2022 estimated Adj. EBITDA of $750MM – $800MM and unlevered Free Cash Flow of $375MM – $400MM, with ~75% of expected 2022 cash flow attributable to PDP[2]
- Balanced portfolio of cash flowing assets and attractive, low-risk reinvestment opportunities in key proven basins across the Lower 48
- Low leverage with pro forma Net Debt / NTM Adj. EBITDA of 1.4x[3]
- Cash flow-oriented business model with a clear focus on superior risk adjusted returns
- Shared commitment to developing industry-leading Environmental, Social and Governance ("ESG") programs and continually improving ESG performance
- Greater than $20 million in estimated G&A synergies with further benefits of scale over time[4]
- Initiation of a go-forward dividend policy targeting approximately 10 percent of Adj. EBITDA

6

The combined business will be managed by KKR's Energy Real Assets team and led by David Rockecharlie, Head of KKR Energy Real Assets, who will serve as Chief Executive Officer. Contango's Chairman and largest shareholder, John Goff, will be Chairman of the Board of Directors of the combined company. Contango's senior leadership, including CEO Wilkie Colyer and President Farley Dakan, will continue managing Contango as an operating subsidiary of the combined company and focus on growth via acquisitions.

\* \* \*

**Transaction Details**
Under the terms of the transaction agreement, Independence will merge with an operating subsidiary ("OpCo") of a new parent company, which will become a publicly traded entity at closing, and Contango will become a wholly owned subsidiary of OpCo

The new company at closing will have an "Up-C" structure. Contango shareholders will receive Class A Common Stock representing voting and economic rights in the new parent company. Independence's owners will receive Class B Common stock representing voting rights in the new parent company and corresponding limited liability company units representing economic interests in OpCo.

**Headquarters and Governance**
The combined company will be headquartered in Houston and expects to operate under a new name and under a new ticker symbol. The combined company intends to seek to be listed on the New York Stock Exchange as part of this transaction.

The Board of Directors of the combined company will be designated by KKR as the holder of the preferred stock discussed below. The initial board of directors at closing will consist of nine directors with two directors designated by Contango, including Mr. Goff as Chairman, and seven directors designated by KKR, including Mr. Rockecharlie.

As part of the transaction, KKR will receive a special class of non-economic preferred stock that provides KKR with the authority to appoint all members of the board of directors as well as certain consent rights over specified actions including incurrence of debt, changes in officers, mergers, acquisitions and divestitures. Upon completion of the merger, KKR's balance sheet will own approximately 17 percent of the combined company. KKR will forfeit the preferred stock if its retained common stock in the business drops below 50 percent of this initial ownership, subject to certain performance thresholds after the company's third annual shareholders meeting.

In addition, the combined company will enter into a management services agreement with a newly formed KKR subsidiary to become the manager of the combined company. The management services agreement will govern the external manager relationship between the public company and the manager as well as provide for the manager's fees and equity incentives consisting of annual grants of restricted shares that vest solely based on absolute and relative share price performance. The agreement will generally provide that upstream oil and gas opportunities sourced by KKR will be presented to the combined company, subject to certain enumerated exceptions.

**Outlook**

Preliminary 2022 estimates of the combined company are shown below:[5]

| **Preliminary 2022E Estimates[6]** | **Combined Company[7]** |
|---|---|
| Daily Production | **108 – 114 Mboe/d** |
| Base PDP Decline | **~15%** |
| *% Hedged[8]* | *~75%* |
| Adj. EBITDA | **$750 MM – $800 MM** |
| *% PDP[9]* | *~75%* |
| *Adj. EBITDA Margin %[10]* | *~55%* |
| Reinvestment Rate[11] | **~50%** |
| Unlevered Free Cash Flow | **$375 MM – $400 MM** |
| Target Dividend | **~10% of Adj. EBITDA** |
| Long-Term Target Leverage | **~1.0x** |

**Timing and Approvals**

The transaction is expected to close late in the third quarter or early in the fourth quarter of 2021, subject to the approval of Contango

shareholders, certain regulatory approvals and satisfaction of other customary closing conditions.

A voting agreement has been signed by John Goff, Contango's largest current shareholder, pursuant to which he has agreed to vote in favor of the transaction, subject to certain specified exceptions.

\* \* \*

**Advisors**
Jefferies LLC is serving as lead financial advisor to Contango, and Gibson, Dunn & Crutcher LLP is serving as legal counsel. Wells Fargo Securities LLC is serving as financial advisor to Independence, and Vinson & Elkins LLP is serving as legal counsel.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Contango's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Registration Statement**

23. On July 23, 2021, Contango and Independent Energy jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

9

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by Jefferies in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading. The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Independent Energy Projections") and provided them to the Board and Jefferies by management of both Contango and Independent Energy with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and their financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections and the Independent Energy Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2021 through 2025: EBITDAX (Unhedged and Hedged); Operating Cash Flows; and Free Cash Flows as calculated by each of the Company's and Independent Energy's management, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

28. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

29. With respect to Jefferies' *Net Asset Value Analysis – Contango*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging

11

from 10.0% to 12.0%; (ii) Contango's general and administrative expenses and hedge book value; and (iii) the Company's net debt.

30. With respect to Jefferies' *Net Asset Value Analysis – Independence*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; (ii) Independence Energy's general and administrative expenses and hedge book value; and (iii) the Company's net debt.

31. With respect to Jefferies' *Discounted Cash Flow Analysis – Contango*, the Registration Statement fails to disclose: (i) unlevered free cash flows that Contango was expected to generate over the period from April 1, 2021 through December 31, 2015 and the line items used to calculate the unlevered free cash flows; (ii) the terminal values of the Company; (iii) the inputs and assumptions underlying the use of the range of multiples of enterprise value to NTM EBITDAX from 5.25x to 8.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 10.0% to 12.0%; and (v) the net debt of the Company as of March 31, 2021.

32. With respect to Jefferies' *Discounted Cash Flow Analysis – Independence*, the Registration Statement fails to disclose: (i) unlevered free cash flows that Independence was expected to generate over the period from April 1, 2021 through December 31, 2015 and the line items used to calculate the unlevered free cash flows; (ii) the terminal values of Independence; (iii) the inputs and assumptions underlying the use of the range of multiples of enterprise value to NTM EBITDAX from 5.25x to 8.0x; (iv) the inputs and assumptions underlying the discount rates ranging from 9.0% to 11.0%; and (v) the net debt of the Company as of March 31, 2021.

33. With respect to Jefferies' *Contango Standalone Present Value of Future Share Price Analysis*, the Registration Statement fails to disclose: basis for applying EV/NTM Adj.

EBITDA multiples of 9.0x to 11.5x earnings per share of Company common stock estimates for each of the fiscal years 2020 to 2022; and (ii) the inputs underlying the discount rate of 12.4%.

34. With respect to Jefferies' *Precedent Transaction Analysis*, the Registration Statement fails to disclose: (i) the date of closing of each transaction; and (ii) the consideration paid for target company.

35. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Contango within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Contango, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Contango, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Contango, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 11, 2021

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*